UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD W. SETTIPANE, II,
    *Plaintiff,*

v.

THE UNITED STATES
OF AMERICA,
    *Defendant.*

CIVIL ACTION NO. 04-10188-REK

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS COMPLAINT FOR JUDICIAL REVIEW OF JEOPARDY ASSESSMENT PURSUANT TO 26 U.S.C. § 7429**

Plaintiff submits this memorandum to the Court in support of his request for abatement of the subject jeopardy assessment, or, in the alternative, redetermination of the amount assessed.

FACTS

By letter dated September 29, 2003, Area Director Stephen L. Daige of the United States Internal Revenue Service notified the plaintiff that he approved a jeopardy assessment, under Internal Revenue Code § 6862, against the plaintiff in the amount of $1,580,972, plus penalties in the amount of $1,185,733, stating: "I have found you may be designing to quickly place your property beyond the reach of the Government and that your financial solvency appears to be imperiled, thereby tending to render ineffectual collection of wagering tax for the periods January 1, 1997, through December 31, 2002[.]" (See Notice of Jeopardy Assessment and Right

of Appeal, Ex. A.)[1]

Area Director Daige's findings were based upon three pieces of information, none of which provide a reasonable basis for the imposition of a jeopardy assessment under the circumstances, and the amount so assessed is inappropriate under the circumstances.

On October 13, 2003, Mr. Settipane, through his attorney, Barry L. Weisman, protested the jeopardy assessment and requested a review of the jeopardy assessment pursuant to 26 U.S.C. § 7429(a)(2). (See Weisman letter dated 10/13/03, Ex. B.) The Internal Revenue Service thereafter informed Attorney Weisman that the jeopardy assessment was determined to be reasonable and appropriate.

A.   <u>Mr. Settipane's transfer of the family residence to his wife</u>.

Area Director Daige states as the first piece of information on which the jeopardy assessment was made:

> "a)   You quitclaimed your primary residence to your wife, Leca M. Settipane, on June 18, 2003, after receiving our initial report reflecting a large deficiency."

(See Notice of Jeopardy Assessment and Right of Appeal, Ex. A at 1.)

The Settipanes' decision to transfer the family residence into Mrs. Settipane's name pre-dated the initial report sent to Mr. Settipane on May 30, 2003, and the decision had no relation to tax implications or assessments.

In April, 2003, an acquaintance of Mr. Settipane, Kirk A. Boggia, an eight-year employee and "loan originator" at Homevest Mortgage Corporation, a mortgage brokerage company, solicited Mr. Settipane to refinance his home mortgage, in light of the prevalent lower interest

---

[1] It should be noted that the Notice of Jeopardy Assessment and Right of Appeal does not reflect the plaintiff's correct Taxpayer Identification Number ("TIN"). The plaintiff's TIN is the same as his social security number, and is not 11-3654856. *See United States v. McGill*, 953 F.2d 10, 14 (1st Cir. 1992) ("In the case of an individual taxpayer, the taxpayer identification number would be the individual's social security number").

rates. (See Boggia Aff. ¶¶ 1-3, Ex. C.) Thereafter, on April 30, 2003, Mr. Settipane applied for refinancing, and both he and his wife, Leca M. Settipane, had their credit ratings checked. (See Boggia Aff. ¶ 4, Ex. C.) Mrs. Settipane's credit score was significantly higher that Mr. Settipane's credit score, and Mr. Boggia therefore suggested to the Settipanes that, as part of the refinancing, their home be put solely in Mrs. Settipane's name, as she, with a higher credit score, was eligible for a more favorable interest rate as the mortgagor, than if Mr. Settipane refinanced the loan in his name. (See Boggia Aff. ¶ 5, Ex. C.) Even a joint refinance by Mr. and Mrs. Settipane would have resulted in a less favorable loan. (See Boggia Aff. ¶ 5, Ex. C.) The Settipanes accepted Mr. Boggia's suggestion, and the closing on the refinance occurred on June 18, 2003, at which time title to the Settipane's home was transferred to Mrs. Settipane. (See Boggia Aff. ¶ 6, Ex. C; Settipane II Aff. ¶ 5, Ex. D.)[2] The refinance produced no cash proceeds, as its purpose was simply to convert the existing mortgage loan balance to a lower interest rate. (See Settipane II Aff. ¶ 5, Ex. D.)

The initial report referenced by Area Director Daige, which he implies triggered Mr. Settipane's transfer of the family home to his wife, is dated May 30, 2003, which was one month <u>after</u> the Settipanes applied for refinancing with Homevest Mortgage. Mr. Settipane went along with Mr. Boggia's suggestion to transfer the residence into Mrs. Settipane's name in order to secure a more favorable interest rate on refinance. (See Settipane II. Aff. ¶ 5, Ex. D.) In their conversations with Mr. Boggia, the Settipanes never mentioned any tax purpose for the refinance. (See Boggia Aff. ¶ 7, Ex C.)

---

[2] The refinance in June, 2003, disproves the statement in the Jeopardy Narrative that "Mr. Settipane paid off a mortgage of $431,100, originating in 2001, on January 25, 2002. There is no evidence of additional refinancing of this mortgage." (See Jeopardy Narrative at 3, attached to Notice of Jeopardy Assessment, Ex. A.)

B. <u>Mr. Settipane's alleged placing of his personal assets in the names of his minor children.</u>

Area Director Daige states as the second piece of information on which the jeopardy assessment was made:

> "b) After your arrest on November 29, 1999, you began to place your personal assets such as brokerage accounts in your minor children's names."

(See Notice of Jeopardy Assessment and Right of Appeal, Ex. A at 1.)

Mr. and Mrs. Settipane have three sons, Paolo, Richard III and Lorenzo, whose ages are currently 10, 6, and 1, respectively. In 1997, Mr. Settipane established a custodial account for the benefit of his son, Richard W. Settipane, III (Commonwealth Financial Network Account # 0C8-225070). Mr. Settipane has not deposited any funds into this account at least since May, 1998. (See Settipane II. Aff. ¶ 3, Ex. D.) The statements of account for account #0C8-225070 confirm year-end balances of $18,396.25 as of December, 1998, $20,235.26 as of December, 1999, $17,546.97 as of December, 2000, $15,655.10 as of December, 2001, $11,208.46 as of December, 2002, and $16,922.17 as of December, 2003. (See 1998-2003 Year-End Statements for Account #0C8-225070, Ex. E.)

In 2001, two other custodial accounts were set up in Mrs. Settipane's name as custodian, one for the benefit of Paolo (Liberty Funds Services Account # 4712000921), and one for the benefit of Richard III (Liberty Funds Services Account # 4712000920). (See Settipane II Aff. ¶ 4, Ex. D; Settipane Aff. ¶ 2, Ex. F.) Mr. Settipane has not contributed any money to these accounts; they have been funded by Mr. Settipane's father. (See Settipane II Aff. ¶ 4, Ex. D; Settipane Aff. ¶ 2, Ex. F.)

C. <u>Destruction of gaming documents occurring on November 29, 1999.</u>

Area Director Daige states as the third piece of information on which the jeopardy assessment was made:

> "c) During the police raid on November 29, 1999 you and employees on your staff attempted to destroy miscellaneous gaming documents in an attempt to destroy evidence of an ongoing illegal gambling business."

(See Notice of Jeopardy Assessment and Right of Appeal, Ex. A at 1.)

On November 29, 1999, Mr. Settipane was arrested by the Massachusetts State Police during a raid of an apartment at 4 Longfellow Place, Boston, Massachusetts. Mr. Settipane pleaded guilty to a misdemeanor single count of using a telephone for gaming purposes, paid a small fine, and no further action was taken against Mr. Settipane by the Massachusetts authorities. Mr. Settipane did not participate in the destruction of documents on November 29, 1999. (See Settipane II Aff. ¶ 1, Ex. D.)

## ARGUMENT

A. <u>The jeopardy assessment is not reasonable under the circumstances.</u>

Under 26 U.S.C. § 7429(b)(3)(1)(A)(i), the Court first reviews *de novo* whether or not the jeopardy assessment is reasonable under the circumstances. *See, e.g., Olbres v. IRS*, 837 F. Supp. 20, 21 (D.N.H. 1993). The defendant bears the burden of proof as to the reasonableness of the jeopardy assessment. *See* 26 U.S.C. § 7429(g)(1).

Based on the submissions to the Court, the plaintiff submits that none of the three stated grounds for the jeopardy assessment relied upon by the defendant supports or justifies the issuance of a jeopardy assessment, and the defendant has wholly failed to prove that the jeopardy assessment issued against the plaintiff is reasonable under the circumstances.

In sum, Mr. Settipane did not deed the Settipane's family residence to Mrs. Settipane as a result of the May 29, 2003, initial report, but rather he did so in order to obtain a lower mortgage interest rate upon refinancing that was applied for earlier, in April, 2003. Mr. Settipane has not placed personal assets in his minor children's names after his arrest on November 29, 1999; rather, one custodial account (Commonwealth Financial Network Account # 0C8-225070) had been set up well before November, 1999, and Mr. Settipane has not contributed to that account since at least May, 1998. As for the two accounts in Mrs. Settipane's name as custodian (Liberty Funds Services Account # 4712000921 and # 4712000920), Mr. Settipane has not transferred any monies to those accounts, but rather, those two custodial accounts have been funded by Mr. Settipane's father. Lastly, Mr. Settipane did not participate in the alleged destruction of records during the November 29, 1999, raid, an event which occurred more than four years ago.

These facts do not support the defendant's position that Mr. Settipane "may be designing to quickly place [his] property beyond the reach of the Government and that [his] financial solvency appears to be imperiled, thereby tending to render ineffectual collection of wagering tax[.]" The jeopardy assessment is unreasonable under the circumstances and should therefore be abated in its entirety.

B. <u>The amount assessed is not appropriate under the circumstances.</u>

If the Court should determine that the jeopardy assessment is reasonable under the circumstances, then the Court next reviews *de novo* whether the amount assessed is appropriate under the circumstances. *See* 26 U.S.C. § 7429(b)(3)(1)(A)(ii); *Olbres*, 837 F. Supp. at 21.

Area Director Daige approved the Jeopardy Assessment for $1,580,972 in taxes and an additional $1,185,733 in penalties, totaling $2,766,705. According to the Jeopardy Narrative, the Massachusetts State Police seized wagering records covering the period from November 1, 1999,

through November 29, 1999—a 29-day period during which $1,046,280 in gross wagers were accepted. Area Director Daige then calculated the average daily gross wagers during this 29-day period as being $36,079. Area Director Daige takes this one-month average and then applies it to a breathtaking six-year period, beginning on January 1, 1997, and ending on December 31, 2002. There is precedent for rejecting this method as inappropriate.

In *Johnson v. United States*, 93-1 U.S. Tax Cas. (CCH) P50, 1993 U.S. Dist. LEXIS 2489 (MD.Ga.1993), the IRS issued two jeopardy assessments against Johnson: one for excise taxes on wagering plus interest and penalties for the periods February 1, 1984, through August 31, 1984, and January 1, 1987, through December 31, 1990, and a second for income taxes plus interest and penalties for the years 1989 and 1990. In calculating these two assessments totaling $145,801, the government relied on one day's gambling tickets from 1984 and one day's gambling tickets for the date December 11, 1990, including an adding machine tape that corresponded to the tickets for that day. In ruling that the amount assessed was inappropriate, the court stated:

> It is the Court's view that the method used by the Government to calculate the amount of these jeopardy assessments is unreasonable because based on a single day's gambling receipts as shown by tickets which were found in a trash can next to a public street, and the method of calculation ignored whether the average of the adding machine tapes relating to one day in 1990 was representative of the volume of business for the entire period assessed.

*Id.* at *6 - *7.

Similarly, in the instant case, it is unreasonable and inappropriate for the government to take one-month's average daily gross wagers and apply it indiscriminately to a six-year period.

By his attorneys,

DiMENTO & SULLIVAN

Dated: February 13, 2004

_____
Francis J. DiMento
BBO NO. 125000
Jason A. Kosow
BBO NO. 644701
7 Faneuil Marketplace, 3rd Floor
Boston, MA 02109-1649
Tel. (617) 523-2345

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing to be mailed on February 13, 2004, to:

Glenn J. Melcher
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044

_____
Jason A. Kosow

- 8 -