UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD W. SETTIPANE, II ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Case No.: 04-10188-REK |

**UNITED STATES OF AMERICA'S PRETRIAL MEMORANDUM**

The United States of America, by its undersigned counsel, submits this pretrial memorandum in support of its jeopardy assessment.

**INTRODUCTION**

This action arises out of a jeopardy assessment made by the Internal Revenue Service against the plaintiff, Richard W. Settipane, II, for unpaid tax and penalty in the amount of $2,766,705.00. The assessment was made for the periods from January 1, 1997 through December 31, 2002, for unpaid wagering excise taxes imposed by 26 U.S.C. § 4401(a)(2).[1][2]

The Internal Revenue Service will be abating so much of the jeopardy assessment as relates to the periods from November 29, 1999 through December 31, 2002. As a result, the issues of whether the jeopardy assessment was reasonable under the circumstances and whether

---

[1] All section references are to the Internal Revenue Code (26 U.S.C.) unless otherwise stated.

[2] §4401 imposes a two percent excise tax on all unauthorized wagers. This tax is imposed on the gross amount of all wagers. Every person engaged in the business of accepting wagers for profit is liable for the tax. 26 C.F.R. § 44.4401-2(a).

1

the amount of the assessment was appropriate under the circumstances is moot for that period.

The IRS, by letter dated September 29, 2003, notified Mr. Settipane of the jeopardy assessment and his right to appeal. The letter and its attachment include an explanation of the jeopardy assessment and the computation of Mr. Settipane's liability.

Mr. Settipane appealed the jeopardy assessment to the IRS Office of Appeals. The IRS Office of Appeals upheld the jeopardy assessment on January 20, 2004. Mr. Settipane timely brought this action pursuant to § 7429(b) on January 27, 2004.

## BACKGROUND

The plaintiff was arrested on November 29, 1999, by the Massachusetts State Police, Special Services Section, Organized Crime Unit. The arrest came as a result of the execution of a search warrant at an apartment located at 4 Longmeadow Place, Apartment 2410, in Boston, Massachusetts. The search warrant had been issued based on information that an illegal wagering operation was being conducted at the apartment.

After forcibly entering the premises of the apartment, the State Police discovered the plaintiff and three accomplices attempting to destroy evidence (which included cash bookmaking ledgers, audiotapes, and daily and weekly tally gambling statements) by throwing it out a window. The State Police seized considerable evidence of illegal gaming activity, including daily and weekly summary wagering sheets, cancelled checks, audio tapes, a computer, a facsimile machine, calculators, a shredder, a pager, line sheets, cash, six telephone lines and betting slips. On the ground outside the window of the apartment, the State Police found gaming evidence and personal papers containing the name of the plaintiff. During the raid of the apartment, the police answered several telephone calls from people trying to place bets. It also was apparent that the apartment was not used as living quarters because there were no beds and the refrigerator and kitchen

cabinets were empty.

Based on evidence seized during the raid of the apartment, the State Police executed a search warrant on the plaintiff's Fleet Bank Account because large deposits were being made to that account on each Tuesday of the month. According to the State Police, bookmakers generally make payments and collections on Tuesday due to the fact that numerous bets are placed on the weekend athletic contests, including bets received on Monday night football.

After his arrest, the plaintiff was charged under Massachusetts law with possession of apparatus to register bets on athletic contests and with use of a telephone for gaming purposes. The plaintiff was convicted of one count of use of a telephone for gaming purposes.

In April of 2001, the plaintiff was informed that the IRS was conducting an examination of his potential liability for unpaid excise tax on wagers pursuant to §4401. At that time, the plaintiff was the sole owner of his residence located at 16 Sunset Avenue, North Reading, Massachusetts. Shortly after being informed that the IRS was conducting a wagering excise tax examination, on July 12, 2001, the plaintiff transferred his residence to his wife and himself, as tenants by the entirety, by quitclaim deed and for consideration of $1.00.

During the examination of the plaintiff's potential wagering excise tax liability, the IRS Revenue Agent reviewed all the audio tapes and betting slips seized by the Massachusetts State Police during the raid on November 29, 1999. The Revenue Agent determined that the audio tapes and betting slips covered the 29 days prior to the plaintiff's arrest. The betting slips and audio tapes revealed gross bets on sporting activities during that 29 day period of $1,046,280.00.

The Revenue Agent also contacted bettors identified through the information seized by the State Police. Those bettors that agreed to be interviewed stated that they placed bets with the plaintiff's organization throughout the period from 1997 through 1999. They also indicated that the

plaintiff's operation included at least five other individuals. The Revenue Agent's interviews also revealed that the plaintiff's bookmaking operation took bets on all professional and collegiate sporting events, as well as dog and horse racing. The bettors also informed the Revenue Agent that the plaintiff's bookmaking operation operated year-round.

The Revenue Agent's review of the evidence seized by the State Police made it apparent that the plaintiff was in charge of the illegal bookmaking operation. The evidence included a taped conversation between a bettor and the betting operation. A mistake had been made with regard to that bettor and the supervisor, the plaintiff here, had to approve the correction. A review of deposited checks to the Fleet Bank account also revealed a refund related to the raided apartment being signed over to the plaintiff (the lease for the raided apartment was in the name of one of the accomplices arrested with the plaintiff).

The IRS met with the plaintiff and his representatives on March 24, 2003, to discuss the examination. During that meeting, the IRS indicated that it would likely propose an assessment covering a much larger period than the 29 days prior to the plaintiff's arrest to which the betting slips related. On May 29, 2003, the IRS provided to the plaintiff a preliminary report proposing assessments against him for wagering excise taxes totaling (with penalties) several million dollars. Less than three weeks thereafter, on June 18, 2003, the plaintiff transferred his largest tangible asset, the interest in his residence which remained after his previous fraudulent conveyance, *see supra*, to his wife by quitclaim deed and for consideration of $1.00.

The Revenue Agent calculated the plaintiff's wagering excise tax liability by dividing the gross bets reflected in the evidence seized during the raid which resulted in the plaintiff's arrest, by the 29 days to which those receipts related. This calculation ($1,046,280.00 divided by 29) resulted in an average gross daily wagering activity of $36,079.00. The Revenue Agent then

multiplied this average gross daily wagering activity times the number of days in each month which the evidence indicated the bookmaking operation operated. He then multiplied the gross wagering activity for each month by the 2 percent tax imposed by § 4401 to arrive at the tax liability for each monthly period.

The plaintiff never filed any Forms 730 (Monthly Tax Return for Wagers) to report his tax liability for the periods during which he engaged in illegal wagering activities, nor did he make any payments towards those liabilities. The plaintiff also did not provide to the IRS during the examination any daily records of the gross amount of all wagers, as required to be kept by §4403, nor did he register with the IRS as required by §4412.

Triggered by the failure of the plaintiff to report his substantial wagering activities, his failure to pay the tax due on that wagering activity, and his efforts to place his major asset out of reach of the Government after becoming aware of the amount of the proposed tax assessments against him, on September 29, 2003, the IRS issued to the plaintiff a Notice of Jeopardy Assessment and Right to Appeal pursuant to § 6861 for taxes and penalties in the amount of $2,766,705 for the monthly periods January 1, 1997, to December 31, 2002. The IRS is abating so much of that assessment as relates to the periods from November 30, 1999, to December 31, 2002. As a result, the amount at issue is $766,313.00 in tax and $574,736.00 in penalties for the monthly periods from January 1, 1997, to November 29, 1999.

## ARGUMENT

### A. Statutory Framework

Jeopardy assessments are made when the Internal Revenue Service believes that the normal procedures for collecting taxes will not be effective. "If the [IRS] believes that the

assessment or collection of a deficiency . . . will be jeopardized by delay, [the IRS] shall . . . immediately assess such deficiency . . . and notice and demand shall be made by the Secretary for the payment thereof. *See* §§ 6861(a) & 6213(a).

A taxpayer against whom a jeopardy assessment has been made may seek administrative review of the reasonableness and appropriateness of the assessment by requesting such administrative review within 30 days after the day on which the taxpayer is furnished a written statement of the information upon which the IRS relies in making a jeopardy assessment. *See* § 7429(a)(2); *see also* § 7429(a)(3).

The conditions under which the IRS may make a jeopardy assessment are defined in §§ 6861 and 6862. Such an assessment may be made when the Secretary of the Treasury believes that assessment or collection of the liability will be jeopardized by delay. This situation exists when the taxpayer designs quickly (1) to depart from the United States, (2) to remove his property therefrom or conceal himself or his property therein, or (3) to do anything which will prejudice the proceedings to collect income tax. Therefore, "when the Service believes that collection of a tax deficiency would be jeopardized by delay, it can demand that the taxpayer pay the deficiency immediately." *Commissioner v. Hendrickson*, 873 F.2d 1018, 1020 (7th Cir. 1989).

Because of the sweeping authority given to the Internal Revenue Service under the jeopardy and termination assessments[3] provisions of the Internal Revenue Code, and because of the possibility of harsh results in a particular case, Congress enacted § 7429 of the Code in 1976 to provide some form of expeditious administrative and judicial review. This section is intended

---

[3] A termination assessment is similar to a jeopardy assessment, but relates to a tax liability for a period which has not ended by terminating the period for purposes of making the assessment. For example, a termination assessment for the tax year 2004 might be made on September 10, 2004, prior to the tax year's end on December 31, 2004.

to provide a very limited judicial review of these actions on an expedited basis.

It is well-settled that the hearings pursuant to §7429 are summary proceedings. *Harvey v. United States*, 730 F. Supp. 1097, 1104 (S.D. Fla. 1990) ("Congress enacted Section 7429 to provide some form of summary judicial review, on an expedited basis"); *Wellek v. United States*, – F. Supp. 2d –, 2004 WL 1541634, *4 (N.D. Ill. July 7, 2004); *Haskin v. United States*, 444 F. Supp. 299, 304 (C.D. Calif. 1977) ("Section 7429(b) entitled, 'Judicial Review', contemplates that a summary proceeding be conducted by federal district courts for the purpose of making an independent determination as to the reasonableness of the making of a jeopardy assessment and appropriateness of the amount of this assessment."); *Hurst v. United States*, 47 A.F.T.R.2d 81-509 (N.D.Fla.1980) (§ 7429 is a "summary proceeding in which hearsay and other usually inadmissible evidence may be considered, and rough determinations must necessarily be made").

The scope of the determination under § 7429 is summary, not reviewable on appeal and is limited to two questions: (1) whether the assessment or levy is reasonable under the circumstances, and (2) whether the amount assessed is appropriate. *See* Section 7429(b)(3); *Klotzman v. United States*, 618 F. Supp. 112, 113 (D. Md. 1985); *Pinto v. United States*, 599 F. Supp. 432, 433 (D. Kan. 1984). The district court proceeding under Section 7429 "is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability...." *Kindsey v. United States*, 1992 WL 179067 at *4 (N.D. Ga. May 26, 1992). Accordingly, the district court should not review the assessment and levy as a trial on the ultimate merits of the tax liabilities. *Id*. That may be accomplished in a later proceeding brought by the taxpayer in Tax Court, Court of Federal Claims, or a United States District Court.

The review is " 'like a preliminary examination for probable cause in a criminal proceeding,' but the standard of review [i.e., reasonableness and appropriateness] differs." *Nolan*

*v. United States*, 539 F. Supp. 788, 790 (D. Ariz. 1982); *United States v. Doyle*, 482 F. Supp. 1227, 1229 (E.D. Wis. 1980), *appeal dismissed*, 660 F.2d 277 (7th Cir. 1981).

      B.      **The Jeopardy Assessment Was Reasonable**

Under § 7429(g)(1), the United States bears the burden of demonstrating whether the jeopardy assessment or jeopardy levy is "reasonable under the circumstances." While § 7429 does not set forth specific guidelines as to what constitutes "reasonable under the circumstances," the courts have stated that this term means "something more than not arbitrary and capricious and something less than supported by substantial evidence." *Felkel v. United States*, 570 F. Supp. 833, 838 (D.S.C. 1983); *Loretto v. United States*, 440 F. Supp. 1168, 1172 (E.D. Pa. 1977). The United States only needs to prove that the circumstances appear to jeopardize collection. *Wellek*, 2004 WL 1541634 at *5; *Cantillo v. Coleman*, 559 F. Supp. 205, 207 (D.N.J.1983); *Guillaume v. Commissioner*, 290 F. Supp. 2d 1349, 1354 (S.D. Fla.2003) (the ultimate question is not whether the taxing authority was correct, but rather whether the assessment was reasonable under the circumstances).

The general test the courts have used to determine whether the making of an assessment is reasonable includes an inquiry into whether (1) the taxpayer is or appears to be planning to quickly depart from the United States to conceal himself; or (2) the taxpayer is or appears to be designing to place his property beyond the reach of the Government either by removing it from the United States or by concealing it, or by transferring it to other persons, or by dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled. *Cantillo v. Coleman*, 559 F. Supp. 205, 206-7 (D.N.J. 1983). If any one of the above three conditions is found to exist, the making of a jeopardy assessment is reasonable. *Nolan*, 539 F. Supp. at 790, citing S. Rep. No. 94-938, p. 365 n. 6, reprinted at 1976 U.S. Code Cong. & Ad. News at 3795.

Other factors may also support the making of a jeopardy assessment. Among the other factors courts will consider are: (1) possession of, or dealing in, large amounts of cash, (2) prior tax returns reporting little or no income despite the taxpayer possessing large amounts of cash, (3) dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other expenses, (4) a lack of assets from which potential tax liability can be collected, (5) the use of aliases making it difficult to locate either the taxpayer or any of his assets, and (6) failure to supply appropriate financial information when requested. *Wellek,* 2004 WL 1541634 at *5; *Mesher v. United States*, 736 F. Supp. 233, 235-36 (D. Or. 1990)*; see also, Felkel v. United States*, 570 F. Supp. 833, 838-841 (D.S.C. 1983) (*assets held in others' names*; *failure to keep and maintain adequate and accurate records*; failure to report appreciable income on personal income tax returns; apparent illegal skimming operation; dealings primarily in cash; false financial statements; and purchases in the names of other individuals); *Magluta v. United States*, 952 F. Supp. 798 (S.D. Fla. 1996)(several factors including *involvement in illegal activity*, possession of large amounts of cash, prior tax returns reporting little or no income despite possession of large amounts of cash); *Young v. United States*, 671 F. Supp. 1340, 1343-44 (S.D. Fla. 1987) (*involvement in criminal activity* and dealing in large amounts of undisclosed cash while reporting small amounts of income on federal tax returns); *Bean v. United States*, 618 F. Supp. 652, 658 (N.D. Ga. 1985)(listing numerous similar factors); *Simpson v. Internal Revenue Service*, 573 F.Supp. 146 (M.D. Tenn. 1983)(*alleged involvement in criminal enterprise*, possession of large amounts of cash and failure to file tax returns); *Vernon v. United States*, 586 F. Supp. 115 (M.D.N.C. 1984) (involvement in illegal drug activities, cash and drugs found in home, small amounts of income previously reported by taxpayer, evidence of major cash purchases).

In light of the time constraints involved in a hearing to review the assessments, and in light

of the fact that the proceeding is intended to be summary in nature with the United States merely required to establish reasonableness of the assessment, the proof the United States can use to satisfy its burden of proof under § 7429(g)(1) need not be in a form that satisfies the requirements of the Federal Rules of Evidence. *Miller v. United States*, 615 F. Supp. 781, 786 (N.D. Ohio 1985); *Marranca v. United States*, 587 F. Supp. 663, 668 (M.D. Pa. 1984). While the United States bears the burden of demonstrating reasonableness of the jeopardy assessment, the burden is light because "(1) the IRS does not have to show that the information it relied upon in making the assessments would be admissible at trial on the merits and (2) the government is not required to make its final case against the taxpayer, but only a preliminary showing of reasonableness." *Hiley v. United States*, 807 F.2d 623, 629 (7th Cir. 1986). Furthermore, it is not essential that each specific item of information upon which the jeopardy assessment or levy is based be accurate in order for the jeopardy determination to be reasonable under § 7429. *Serpa v. United States*, 1981 WL 1759, 81-1 U.S.T.C. ¶ 9323, (D. Neb. 1981).

In determining whether the assessment is reasonable and the amount assessed is appropriate, the Court "is to take into account not only information available to the Internal Revenue Service on the assessment date, but also any other information which bears on the issues before it." *Haskin*, 444 F. Supp. 299, 304 (C.D. Cal. 1977) (*citing* S. Rep. No. 94-938 at 365); *see also Magluta*, 952 F. Supp. at 801; *Harvey*, 703 F. Supp. at 1104.

There can be no doubt that the jeopardy assessment in this case was reasonable. The plaintiff appears to have a long history of engaging in illegal wagering activity. He has failed to file any monthly tax returns for wagers, failed to keep daily records as required and failed to register with the IRS. Further, he transferred his interest in his only known significant asset, his residence, twice. First, when he became aware the IRS was initiating an exam, he transferred his

solely owned residence to a tenancy by the entirety with his wife. Second, almost immediately after he became aware of the large amount of his potential tax liability, he transferred the residence from a tenancy by the entirety with his wife to sole ownership in her name alone. Moreover, the plaintiff's solvency is at risk, since it appears he owns no significant property and property that is actually his is titled in the name of his wife. He also does not appear to keep any assets in his own name. The perception that the plaintiff was attempting to evade his tax obligations is not only reasonable, it is inescapable.

      **C.**      **The Amount Of The Assessment Was Appropriate**.

      **1.**      **The Applicable Standard.**

The plaintiff bears the burden of proof regarding the appropriateness of the amount assessed. *See* § 7429(g)(2). The amount assessed by the IRS is presumed to be reasonable and appropriate under the circumstances. *Felkel v. United States*, 570 F. Supp. 833, 841 (D.S.C. 1983). The law does not require the Court to determine whether the amount of the tax liability assessed against the plaintiff is accurate; the issue is whether the amount is appropriate under the circumstances. *Magluta v. United States*, 952 F. Supp. 798, 803 (S.D. Fla. 1996). In determining whether the amounts of the assessments are appropriate, the Court should examine only the method of computation. In this regard, the plaintiff must show that the method of computation is manifestly incorrect. *Metral v. United States*, 59 A.F.T.R.2d 87-730 (S.D. Fla. 1987). That is, the burden rests on the taxpayer to prove that the method used is "fatally defective, irrational, arbitrary or unsupported." *Magluta*, 952 F. Supp. at 803 (citing *Granse v. United States*, 892 F. Supp. 219, 224 (D. Minn. 1995)). The law is that if "there is at least a sense of credibility and correctness regarding the . . . computation of the deficiency assessment," then plaintiff will have failed to meet

his burden of establishing that the amount assessed is not appropriate. *Gaw v. C.I.R.*, T.C. Memo 1995-373 (Tax Ct. 1995); *Park v. United States*, 1992 WL 136622, 69 A.F.T.R.2d 92-1075, 92-1 U.S.T.C. ¶ 50,270, (C.D. Cal. Mar. 30, 1992) (citing *Camp v. Commissioner*, 635 F. Supp. 585, 588 (E.D. La. 1986)).

Any claim concerning merely the incorrectness of the assessed amounts, rather than the method of computation, may be determined in a subsequent proceeding before the Tax Court or in a suit for refund. *Cantillo v. Coleman*, 559 F. Supp. 205, 207 (D.N.J. 1983). There is "nothing in the Code requiring that jeopardy assessments be based upon computations fitted together with the accuracy of Dutch tiles. The rapidity of action inherent in insulating collection against loss by *delay* hardly suggests the leisure of chartered accountants over their books and tea." *Homan Manufacturing Co. v. Long*, 242 F.2d 645, 650 (7th Cir. 1957) (emphasis in original). Courts have consistently recognized that the computations made in the these situations are based upon assumptions which may be lacking, to some degree, in accuracy. *Amyx v. United States*, 529 F. Supp. 98, 100 (S.D. Ohio 1981).

**2. The Method of Computation.**

In this case, the taxpayer cannot show, as he must, that the method of computation was fatally defective, irrational, arbitrary, or unsupported.

As noted previously, the IRS reviewed all the audio tapes and betting slips seized by the Massachusetts State Police during the raid on November 29, 1999. The slips and tapes revealed gross bets on sporting activities of $1,046,280.00 for the 29-day period from November 1, 1999, through the day of the raid. In order to compute the average daily wagering activity in this 29-day period, the IRS divided the gross wagering amount of $1,046,280.00 by 29 days. The computation yielded an average daily wagering amount of $36,079.00.

Because the IRS determined that the plaintiff had engaged in illegal bookmaking at least from January 1, 1997, through the day of his arrest on November 29, 1999, and because the plaintiff did not provide betting records for the time before November of 1999, the IRS extrapolated from the evidence of wagering activity that it did have. Extrapolation from available evidence is a permissible method of proving the volume of unreported wagers. *Gordon v. Commissioner*, 572 F.2d 193, 195, (9th Cir. 1977); *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir. 1977); *Carson v. United States*, 560 F.2d 693 (5th Cir. 1977); *Schildcrout v. United States*, 580 F.2d 994, 999 (9th Cir. 1979). The IRS used the following method to compute the wagering taxes due from the plaintiff:

- January, March, May, July, August, October, and December have 31 days in each month.
- February has 28 days.
- April, June, September, and November have 30 days in each month.
- Multiply the number of days in each month by the average daily wagering amount of $36,079.00.
- Multiply the resulting monthly gross wagering amount by .02 to determine the monthly wagering tax liability as defined by §4401, which provides for a 2% excise tax on bets earned by any wager if such gambling is not authorized by the state.

This method yielded the following results:

| Period | Method of Computation | Tax |
|---|---|---|
| Jan. 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Feb. 1997 | 28 days x $36,079 daily avg. = $1,010,212 monthly avg. x .02 = | $20,204 |
| March 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| April 1997 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| May 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| June 1997 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| July 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |

| Period | Method of Computation | Tax |
|---|---|---|
| Aug. 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Sept. 1997 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| Oct. 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Nov. 1997 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| Dec. 1997 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Jan. 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Feb. 1998 | 28 days x $36,079 daily avg. = $1,010,212 monthly avg. x .02 = | $20,204 |
| March 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| April 1998 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| May 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| June 1998 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| July 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Aug. 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Sept. 1998 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| Oct. 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Nov. 1998 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| Dec. 1998 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Jan. 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Feb. 1999 | 28 days x $36,079 daily avg. = $1,010,212 monthly avg. x .02 = | $20,204 |
| March 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| April 1999 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| May 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| June 1999 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |
| July 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Aug. 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg. x .02 = | $22,369 |
| Sept. 1999 | 30 days x $36,079 daily avg. = $1,082,370 monthly avg. x .02 = | $21,647 |

| Period | Method of Computation | Tax |
|---|---|---|
| Oct. 1999 | 31 days x $36,079 daily avg. = $1,118,449 monthly avg.  x .02 = | $22,369 |
| Nov. 1999 | 29 days x $36,079 daily avg. = $1,046,291 monthly avg.  x .02 = | $20,926 |
|  |  | $766,313 |

### 3. The Method of Computation Cannot Be Fairly Characterized as Manifestly Incorrect

The plaintiff argues that the method employed by the IRS to compute the amount of the jeopardy assessment is "unreasonable and inappropriate." Pl.'s Mem. Supp. Comp. at 7. In support of his argument, he cites only one case. In *Johnson v. United States*, the Court held that the amounts of two jeopardy assessments were inappropriate because "the method of calculation ignored whether the average of the adding machine tapes relating to one day in 1990 was representative of the volume of business for the entire period assessed." 1993 WL 113490, 71 A.F.T.R.2d 93-1237, 93-1 USTC P 50,145 (M.D. Ga., Feb 11, 1993). In this case, however, the plaintiff has made no argument that the month of November, 1999, was not representative of the wagering activity for the period assessed. Indeed, if it wasn't representative it is only because November is a month during which no major sporting events are held and thus fewer, rather than more, wagers would have been made. As a result, this is not an argument we expect plaintiff to make.

Furthermore, the plaintiff fails to account for the cases which hold that estimates and extrapolations are reasonable means of determining assessments, especially when the taxpayer does not provide much information regarding his activity. *Duckart v. United States*, 1991 WL 328025, 69 A.F.T.R.2d 92-505, 92-1 USTC P 50,064 (N.D. Cal., Dec 09, 1991) (approving IRS estimation for five year period from seized records covering one month and the taxpayer's

admissions that he had been in the business for five years); *Schildcrout*, 580 F.2d at 999 (approving IRS estimation of betting volume for thirteen-month period from data covering ten days); *Welch v. United States*, 1990 WL 235643, 71A A.F.T.R.2d 93-4019, 90-2 USTC P 50,582, (S.D. Fla., Nov 02, 1990)(approving IRS extrapolation of betting volume for 19-month period from seized records covering 26 days).

Finally, "it must be remembered that a taxpayer is under a duty to keep adequate records of the wagers that he received." *Creech v. United States*, 1995 WL 499461 *9 (N.D. Ga. 1995) 76 A.F.T.R.2d 95-6065, 95-2 USTC ¶ 50,470 *citing United States v. Firtel*, 446 F.2d 1005, 1006-1007 (5th Cir. 1971). And "[o]ne engaged in the business of accepting wagers cannot rebut the Government's wagering tax assessment against him on mere allegations that such assessment was arbitrary, excessive, invalid or illegal. The assessment can be overturned only by the taxpayer producing records and other evidence which clearly demonstrates the proper amount of tax which he owes the Government." *Id.*, *quoting Ginsburg v. United States*, 67-2 USTC ¶ 15,757, 19 A.F.T.R.2d 1549 (C.D. Cal. April 20, 1967).

Consequently, the plaintiff cannot meet his burden of showing that the method of computation employed by the IRS was manifestly incorrect. The IRS's method was reasonable, and the amounts assessed were appropriate.

## CONCLUSION

The jeopardy assessment was reasonable under the circumstances, and the amount assessed was appropriate under the circumstances. As a result, the United States respectfully requests that the Court dismiss the Complaint and sustain the jeopardy assessment in full.

Respectfully submitted,

MICHAEL J. SULLIVAN

United States Attorney

BARBARA HEALY SMITH
Assistant U.S. Attorney


    /S/ Glenn J. Melcher
GLENN J. MELCHER
MATTHEW C. HICKS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephones:   (202) 307-6573
                    (202) 307-6542
Facsimile: (202) 514-5238
Glenn.J.Melcher@usdoj.gov
Matthew.C.Hicks@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED thatt, on this 13th day of August, 2004, a copy of the foregoing UNITED STATES OF AMERICA'S PRETRIAL MEMORANDUM was filed electronically. Notification of this filing will be sent to each counsel via the electronic filing system. A copy of this document will also be sent to the following counsel of record by first class mail.

Francis J. DiMento, Esq.
DiMento & Sullivan
7 Faneuil Marketplace, 3rd Floor
Boston, MA 02109


    /S/ Glenn J. Melcher
GLENN J. MELCHER
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephones:   (202) 307-6573