UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| RICHARD W. SETTIPANE, II, <br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES <br> OF AMERICA, <br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO. 04-10188-REK |

**PLAINTIFF'S OPPOSITION TO UNITED STATES OF AMERICA'S
MOTION *IN LIMINE***

Plaintiff opposes the United States of America's motion *in limine*.

The plaintiff's proposed evidence seeks not merely to demonstrate that the plaintiff is not designing quickly to place his property beyond the reach of the government by concealing it, but also to illuminate all the circumstances surrounding the facts relied on by the United States. This will permit the Court to review *de novo* whether the jeopardy assessment was reasonable under all the circumstances. *See Olbres v. IRS*, 837 F. Supp. 20, 21 (D.N.H. 1993) (the Court reviews *de novo* whether or not the jeopardy assessment is reasonable under the circumstances).

It is well established that the Court may consider evidence of all circumstances surrounding the facts used to justify the jeopardy assessment, and the Court's review is not limited to the conditions set forth in the IRS' Manual:

> In ascertaining the "reasonableness" of the Service's conduct, the Congress has given scant guidance to the district courts. Other than the "jeopardized by delay" criterion embodied in 29 U.S.C. § 6861(a), quoted supra, the statute is, as to this point, most notable for its silence. The Service, in its Manual,[see Treas. Reg. 1.6851-1(a)(1978)] hypothesizes that the existence of any of three conditions will soundly bottom a jeopardy assessment, to wit:

1. If the taxpayer has left American shores, or appears to be designing so to depart with unseemly haste; or

2. If the taxpayer has placed, or appears to be designing quickly to place, his assets beyond the reach of the government by transfers abroad or to third parties, or by dissipation; or by concealment; or

3. If the taxpayer's fiscal solvency appears to be imperiled.

The legislative history of § 7429 indicates congressional approval of the standards set forth in the Manual. See Senate Finance Committee, S. Rep. No. 94-938 (part II), 94th Cong., 2d Sess., 360 n. 1 (1976). ***Even accepting these conditions, if extant, as sufficient in law to trigger jeopardy assessments, it is well settled that this Court's review is not in any way, shape or form restricted thereto***.

*Revis v. United States*, 558 F. Supp. 1071, 1074 (D.R.I., 1983) (Selya, J.) (emphasis added.)

The jeopardy assessment statute's legislative history likewise demonstrates that the Court's determination as to reasonableness of the jeopardy assessment should take into account all relevant information presently available:

> The Senate Report makes it absolutely clear that neither the initial administrative review nor the judicial review should be confined to information available to the Service when it acted; rather, ***any relevant information should be considered***, both in determining the reasonableness of the assessment and in determining the appropriateness of the amount assessed. S. Rep. No. 94-938 (part I), 94th Cong., 2d Sess. 364-65 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin. News 3439, 3793-94.
>
> * * *
>
> It thus seems fairly clear that the House bill required a determination of whether the assessment was reasonable (and appropriate in amount) at the time it was made, and that the House report language quoted earlier simply spelled out the inconsistency of making this determination based (in part) on information that was unavailable at the time the Service acted. The Senate amendment, on the other hand, contemplated a finding as to whether the assessment "is" reasonable and appropriate, and ***the Senate report made it explicit that a finding on present reasonableness should incorporate all the relevant information presently available***. Inasmuch as the conferees adopted the language of the Senate bill, I conclude that the likely intent of Congress was that ***in determining reasonableness and appropriateness, "the [district] court is to take into account***

> *not only information available to the Service at the time of the assessment but also any other information which bears on these issues.*" S. Rep. No. 94-938 (part I), 94th Cong., 2d Sess. 365 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin. News 3439, 3794.

*Loretto v. United States*, 440 F. Supp. 1168, 1174 (D. Pa. 1977) (Luongo, J.) (emphasis added).

The plaintiff is entitled to present evidence which rebuts the facts relied on by the United States. In *Stebco v. United States*, 733 F. Supp. 1387 (S.D. Ca. 1990) (Rhoades, J.), the court found a jeopardy assessment unreasonable where the plaintiff-taxpayer submitted evidence, including affidavits, which refuted the IRS' declarations in support of the assessment:

> The district court should make a de novo determination of whether the making of the assessment was reasonable. 26 U.S.C. § 7429. Accordingly, *a court may consider not only information available to the IRS at the time of the assessment, but also any relevant information gathered after that date*. *See, e.g., Perillo v. United States*, (CCH) 86-2 U.S.T.C. P 9638 (E.D.N.Y. 1986); *Bean v. United States*, 618 F. Supp. 652, 657 (D.C. Ga. 1985); *Miller v. United States*, 615 F. Supp. 781, 785 (D.C. Ohio 1985); *Revis v. United States*, 558 F. Supp. 1071, 1074-75 (D.R.I. 1983); *Berkery v. United States*, 544 F. Supp. 1, 5 (E.D. Pa. 1982); *McAvoy v. Internal Revenue Service*, 475 F. Supp. 297, 298 (W.D. Mich. 1979). The court may consider evidence which would not be admissible at a trial. *Hecht v. United States*, 609 F. Supp. 264, 266 (S.D.N.Y. 1985).

*Stebco, Inc. v. United States*, 733 F. Supp. 1387, 1390 (D. Cal. 1990) (Rhoads, J.) (emphasis added).

> Here, the government contends that the plaintiffs were or appeared to be designing quickly to place themselves and/or their assets beyond the reach of the IRS. Were this court to consider only the information available to the IRS agent at the time the assessment decision was made, this court would have little difficulty concluding that the assessment was reasonable. However, *considering all evidence available to date, this court finds that the assessment was not reasonable*.
>
> First, *much of the information in the IRS declaration has been refuted by several credible declarations submitted by the plaintiffs*. More importantly, several infirmities in the IRS declaration cast doubt on the overall probative value of the document.
>
> For example, the IRS agent relied on the statement of an unnamed neighbor and alleged that the taxpayers "may have sold the major known asset, the residence on Greenwood Drive." This assertion is incorrect. *This court has*

>   ***been provided with the affidavit of a vice president of a title company which establishes that the individual taxpayers are the owners of the Bonita house. The taxpayers owned the house at the time of the jeopardy assessments and currently own the house.*** n4 ***What is most troublesome to this court is that this is an easily discoverable fact: an IRS agent need only check with the County Recorder's Office to uncover such information***.
>
>   *Stebco, Inc. v. United States*, 733 F. Supp. 1387, 1391 (D. Cal. 1990) (Rhoads, J.) (emphasis added).
>
>   ***By way of a bank manager's affidavit, the plaintiffs have refuted IRS allegations*** that they provided a bank with a false taxpayer identification number. Also, ***plaintiff Carrillo-Barron admits to filing W-8 Forms, but claims that he did this on the advice of investment firms, and did not intend to conceal the accounts from the IRS***. ***Plaintiff has attached as an exhibit the information he received from the investment firms***. Moreover, ***by way of several credible declarations***, plaintiffs have established that they began building a home in Tijuana, Mexico in late 1984, and moved in upon completion in late 1987. The Carrillos resided at all times after December 1987 in Mexico.
>
>   Finally, ***plaintiffs have again showed, by way of trustworthy declarations, that Stebco was not designing to place its property beyond the reach of the IRS.*** Selling properties was part of Stebco's business, but at the time of the jeopardy assessment, Stebco held at least six parcels of real property with a cost of over $ 1,400,000 and a net fair market value of between $ 2,500,000 and $ 3,000,000. ***The IRS has presented no evidence that Stebco was attempting to sell this property quickly or at a loss***.
>
>   *Stebco, Inc. v. United States*, 733 F. Supp. 1387, 1391-1392 (D. Cal. 1990) (Rhoads, J.) (emphasis added).

Further, in *Selbe v. United States*, 899 F. Supp. 1524 (W.D. Va. 1995) (Kiser, J.), the court, citing *Stebco*, found that the jeopardy assessments were unreasonable in light of the fact that the real estate transactions in question were a matter of public record, and therefore could not be construed as concealed transactions to put property beyond the reach of the government:

>   The government justified the jeopardy assessment as reasonable under the circumstances, arguing that by selling his home and assigning the note to his wife, Selbe was attempting to put property beyond the reach of the government. . . . Selbe counters that he did not own the note and, therefore, did not conceal its existence. . . . Selbe disclosed the sale, and **the IRS discovered the note in the public records, thus it was hardly concealed**. The Stebco court found the fact that ownership of the asset at issue (also a house) was publicly recorded to be

> significant in its determination that the jeopardy assessment based on alleged concealment of that asset was unreasonable. . . . The IRS had relied on a rumor that the taxpayers may have sold the house, their major asset, and contended that they were trying to put their assets beyond the reach of the IRS. The evidence revealed that the taxpayers owned the house at the time of the assessment and at the time of the suit.

*Selbe v. United States*, 899 F. Supp. 1524, 1536 (W.D. Va. 1995) (Kiser, J.).

Based on the foregoing authorities, the plaintiff submits that it is unreasonable for the government to rely on unsubstantiated conjecture (*e.g.*, transfer of family home was designed to put the asset beyond the government's reach), where there are easily discoverable facts that disprove the government's position (*e.g.*, the transfers were made at the direction of mortgage brokers in connection with obtaining the most favorable refinancing rates at a time when it was widely known that interest rates were plummeting). The evidence relating to the Settipanes' home (*e.g.*, deeds, mortgages) is a matter of public record, and it was and remains easily discoverable. It therefore cannot be construed as secreting away an asset, or a form of concealment.

Moreover, title to the Settipanes' family home went no farther than the plaintiff's wife, and the plaintiff continued to maintain the property as his family's residence. There has been no increase in the size of the mortgage on the property since the 2001 refinance, where it was easily discoverable that the increase was plowed back into the home through substantial renovation, increasing the value of the home.

Additionally, the plaintiff submits that the Court may take judicial notice of the well-known mortgage refinance boom during the Spring and Summer of 2003, which was a result of historically low interest rates. *See* Fed. R. Evid. 201; *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 765 (1st Cir. 1985) (court taking judicial notice of interest rates as matters of historical fact).

For the foregoing reasons, the plaintiff should be allowed to present evidence of all circumstances relating to the facts relied on by the United States in support of the jeopardy assessment, and the United States' motion *in limine* should be denied.

By his attorneys,

DIMENTO & SULLIVAN

Dated:  September 20, 2004         /s/  Jason A. Kosow
Francis J. DiMento
BBO NO. 125000
Jason A. Kosow
BBO NO. 644701
7 Faneuil Marketplace, 3rd Floor
Boston, MA 02109-1649
Tel. (617) 523-2345