For Publication
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
RICHARD SETTIPANE, II,                      )
    Plaintiff                              )
                                            )        CIVIL ACTION
    v.                                      )        NO. 04-10188-REK
                                            )
UNITED STATES OF AMERICA,                   )
    Defendant                              )
_____)

**Findings of Fact and Conclusions of Law**
December 7, 2004

This matter came before the court for judicial review of a jeopardy assessment made by the Internal Revenue Service ("IRS") against the Plaintiff, Richard Settipane, II ("Plaintiff"), for the tax years 1997 through 2002. The court held a bench trial. Upon full hearing and consideration of this matter the court reaches the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT:**

1. Plaintiff resides at 16 Sunset Avenue, North Reading, Massachusetts 01864 ("the Property"). (Govt. Exhibit 1 at p.1; Testimony of Leca Settipane)

2. The Property is the family home of Plaintiff, his wife Leca Settipane, and his three children. (Testimony of Leca Settipane)

3. Plaintiff makes the financial decisions for the Settipane family. (Testimony of Leca Settipane)

4. Plaintiff acquired the Property on November 12, 1997, for $337,900 and secured a mortgage on the same date for $270,320. (Govt. Exhibit 6)

5. The Property owned by Plaintiff is his only major asset. (Govt. Exhibits 1, 7, and 8; Testimony of John Cardone at p.47-49)

6. The mortgage on the Property was refinanced by Plaintiff on October 25, 1999, in the amount of $284,000. (Govt. Exhibit 6)

7. Plaintiff was arrested November 29, 1999. At that time, Plaintiff was caught attempting to destroy illegal bookmaking ledgers, audiotapes, and sundry daily and weekly tally gambling statements. (Govt. Exhibit 5)

8. Plaintiff has been involved with ongoing illegal bookmaking operations dating back before the tax year 1997. (Govt. Exhibit 5; Testimony of John Cardone at p.29; Exhibit 15 at Bates stamp 3760-61)

9. Plaintiff did not indicate income from bookmaking activities on his income tax returns. (Testimony of John Cardone at p.30 and Testimony of Leca Settipane)

10. At the time of Plaintiff's arrest, the police were able to recover and the IRS looked at betting slips for a period of 29 days. (Testimony of John Cardone at p.29)

11. The betting slips indicate teams who play other teams in different events. (Testimony of John Cardone at p.29)

12. An IRS revenue agent determined the tax liability for Plaintiff's bookmaking operations by taking the betting slips and using them to determine average daily wagering activity. This number was multiplied by the number of days in each month. The IRS agent then multiplied the monthly totals by .02%, the percentage used in determining wagering tax

liability. The IRS then added to this total an estimation of the penalties due under IRC § 6651 for fraudulent failure to file a return. The penalty for fraudulent failure to file a return is 75 percent. (Testimony of John Cardone at p.29-30, 52; Exhibit 15 at Bates stamp 3760-62; and Exhibit 2)

13. The IRS revenue agent determined the average daily wagering activity to be $36,079. (Exhibit 15 at Bates stamp 3759; Testimony of John Cardone at p.30)

14. In April of 2001, Plaintiff was informed that an "illegal wagering examination" was being conducted by the IRS regarding his wagering activities. (Govt. Exhibit 14 at Bates stamp 3737)

15. On July 12, 2001, Plaintiff transferred the Property to himself and his wife, Leca Settipane, as tenants in the entirety for consideration of $1. The transfer was recorded on July 13, 2001. (Govt. Exhibit 6 at Bates stamp 2057; Testimony of John Cardone at p.43)

16. On August 10, 2001, Plaintiff and Leca Settipane refinanced the mortgage on the Property, with the new mortgage totaling $431,100. (Govt. Exhibit 6 at Bates stamp 2046)

17. Plaintiff was sent a preliminary report dated May 29, 2003, detailing a large wagering tax deficiency for the period January 1, 1997, through December 31, 2002. (Govt Exhibit 15 at Bates stamp 3760; Testimony of John Cardone at p.45-46)

18. On June 13, 2003, Plaintiff transferred the Property to Leca Settipane for the declared consideration of $1. The deed was recorded on June 18, 2003. (Govt. Exhibit 6 at Bates stamp 2093; Testimony of John Cardone at p.70)

19. On June 13, 2003, Leca Settipane refinanced and took out a $435,500 mortgage on the

Property.  (Plaintiff's Exhibit 101; Testimony of Leca Settipane)

20. A substantial portion of the money taken from the equity in the Property was used to remodel the Property.  (Testimony of Leca Settipane; Plaintiff's Exhibits 102-04)

21. The IRS notified Plaintiff of its decision to make a jeopardy assessment under 26 U.S.C. § 6862 in a letter dated September 9, 2003.  (Govt. Exhibit 15)

22. When deciding to make a jeopardy assessment, the IRS was not aware of Plaintiff and Leca Settipane's refinancing of the mortgage in June of 2003.  (Testimony of John Cardone at p.71-72)

23. Leca Settipane has a better credit rating than Plaintiff and consequently has a greater ability to draw equity out of the Property through refinancing.  (Testimony of Ralph Valentine and Testimony of Kirk Boggia)

24. The Property still has substantial equity which may be withdrawn.  (Testimony of Kirk Boggia)

**CONCLUSIONS OF LAW:**

1. This court has jurisdiction in this matter under 26 U.S.C. § 7429.

2. "If the Secretary believes that the collection of any tax (other than income tax, estate tax, gift tax, and the excise taxes imposed by chapters 41, 42, 43, and 44) under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, immediately assess such tax (together with all interest, additional amounts, and additions to the tax provided for by law). Such tax, additions to the tax, and interest shall thereupon

become immediately due and payable, and immediate notice and demand shall be made by the Secretary for the payment thereof." 26 U.S.C. § 6862(a).

3. Judicial Review under § 7429 is limited to the district court's determination whether the jeopardy assessment is "reasonable under the circumstances" and whether the amount assessed is "appropriate under the circumstances." 26 U.S.C. § 7429(g)(1) and (2).

4. Review of the reasonableness of a jeopardy assessment and the appropriateness of the assessment made is de novo. Welleck v. United States, 324 F.Supp.2d 905, 911 (N.D. Ill. 1994) (citation omitted).

5. "Since the judicial review is a summary proceeding, the Court can hear evidence that may be inadmissible in a trial on the merits." Id. at 911 (citation omitted).

6. "Reasonable under the circumstances" for the purposes of determining the reasonableness of a jeopardy assessment "means something more than 'not arbitrary or capricious,' and something less than 'supported by substantial evidence.'" Harvey v. United States, 730 F.Supp. 1097, 1104 (S.D.Fla. 1990) (citations and quotation omitted).

7. The burden of proof for establishing the reasonableness of a jeopardy assessment lies on the government. § 7429(g)(1).

8. In making a reasonableness determination, the "Court is required to view the information available to the IRS at the time the assessment was made, together with any after-acquired information, including that submitted by the taxpayer." Vanerio v. I.R.S., 629 F.Supp. 1141, 1144 (E.D.N.Y. 1986) (citing Loretto v. United States, 440 F.Supp. 1168, 1173 (E.D.Pa. 1977). See also Miller v. United States, 615 F.Supp. 781, 785 (N.D.Ohio 1985)

(citation omitted); *Evidence; Admissibility of Information Obtained by IRS Subsequent to Assessment*, *in* 20 FEDERAL PROCEDURE, LAWYER'S EDITION § 48:723 (June 2004).

9. Courts generally look to three alternative standards in determining whether an assessment was reasonable:

   (i) The taxpayer is or appears to be designing quickly to depart from the United States to conceal himself;

   (ii) The taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

   (iii) The taxpayer's financial solvency appears to be imperiled.

Cantillo v. Coleman, 559 F.Supp. 205, 206-07 (D.N.J. 1983) (citation omitted).

10. Additional factors can contribute to a finding that the taxpayer's circumstances can be reasonably found to threaten the collection of a tax. These include:

   (i) erratic fiscal behavior;

   (ii) possession of or dealing in a large amount of cash;

   (iii) previous tax returns indicating little or no income while a person possesses large amounts of cash;

   (iv) dissipation of assets;

   (v) a lack of assets from which tax liability can be collected;

   (vi) the use of aliases to hide assets; and

      (vii)    failing to supply appropriate financial information upon request.

See Welleck, 324 F.Supp.2d at 912 .

11.    To determine whether the amount assessed is appropriate, the court does not have to find the correct amount of tax liability. Instead, "[t]he burden is on the taxpayer to show that the method of calculating the assessment amount is fatally defective, irrational, arbitrary, or unsupported." Id. at 913-14.

12.    Substantial evidence exists to support the IRS's decision to make a jeopardy assessment: (i) the Property is Plaintiff's only significant asset; (ii) the Property has been transferred to Leca Settipane allowing greater dissipation of the equity of the home; (iii) Plaintiff and Leca Settipane have removed substantial equity from the home despite being informed of an ongoing IRS investigation into unpaid tax liability; (iv) equity still exists in the Property that can be dissipated through refinancing; (v) Plaintiff, despite the name on the title, makes all the financial decisions for the Settipanes; and (vi) Plaintiff has demonstrated a willingness to conceal income from the IRS.

13.    Although Plaintiff has provided some evidence to show that his reasons for refinancing the Property were motivated by the benign intent to capitalize on the low mortgage interest rates, it is not enough to prevent the government from meeting its low burden of proof given the considerations noted above.

14.    Plaintiff has failed to meet his burden to demonstrate that the IRS's method of calculating the assessment is "fatally defective, irrational, arbitrary, or unsupported." Plaintiff did not put forth any independent evidence in this regard, and the government demonstrated that

the IRS used the information available to it to calculate an estimated tax liability that is "appropriate under the circumstances."

In light of the above findings and conclusions and after due consideration, it is ADJUDGED:

1. The decision of the IRS to make a jeopardy assessment was "reasonable under the circumstances."

2. The amount assessed by the IRS was "appropriate under the circumstances."

3. The clerk is directed to enter forthwith on a separate document a Final Judgment as follows: Judgment for the Defendant, the United States of America, and against the Plaintiff, Richard R. Settipane, II, each party to bear its own costs.

      _____/s/Robert E. Keeton\_\_\_\_
      Robert E. Keeton
      Senior United States District Judge